Filed 11/27/24  P. v. Tunney CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERIC J. TUNNEY,<br><br>    Defendant and Appellant. | D083052<br><br><br><br>(Super. Ct. No. SCE416526) |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

Jennifer M. French, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

After being charged with attempted murder and other crimes for a random and unprovoked knife attack on another trolley passenger, Eric J. Tunney pled guilty to assault with a deadly weapon. He now appeals from the denial of his pretrial motion for mental health diversion under Penal Code[1] section 1001.36. He contends that (1) the trial court applied an incorrect legal standard in determining that he posed an unreasonable risk of danger to public safety, and (2) the trial court's finding of dangerousness is not supported by substantial evidence.

We conclude the trial court properly exercised its discretion and substantial evidence supports its express and implied findings that Tunney would pose an unreasonable risk of danger to public safety and was therefore not suitable for mental health diversion. (§ 1001.36, subd. (c)(4).) Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2022, Tunney was living with his mother T.H. (Mother). According to Mother, Tunney had repeatedly received emergency treatment for extreme intoxication and his erratic behavior had been escalating. Just before midnight on September 10, 2022, police officers responded to a 911 call from Tunney's aunt A.T. (Aunt). Tunney was heavily intoxicated and had lunged at Aunt and threatened to kill Mother during an argument. The responding officer determined Tunney was a danger to others, placed him on a 72-hour hold under Welfare and Institutions Code section 5150, and arrested him for making criminal threats in violation of section 422, subdivision (a).

---

[1] All further statutory references are to the Penal Code.

2

On January 24, 2023, Tunney was arrested for driving under the influence of a drug. He exhibited signs of paranoia and agitation. Three days later, on January 27, 2023, Tunney called police, claiming he was being followed. He was arrested for being under the influence in public with the inability to care for his own safety or the safety of others. (§ 647, subd. (f).) Approximately one week later, on February 4, 2023, Tunney was again arrested for being under the influence in a public place with the inability to care for his own safety or the safety of others. (*Ibid.*)

On February 22, 2023, Mother reported Tunney was missing and had turned off his cell phone because he believed people were following him. According to Mother, Tunney was addicted to methamphetamine, suffering from depression and Posttraumatic Stress Disorder (PTSD), and "getting worse."

Three days later, while riding the trolley on February 25, 2023, Tunney stood up behind a fellow passenger (P.W.), wrapped his arm around him, and held a knife against his chest. Tunney said, "don't move" while he held the knife seven to eight inches from P.W.'s neck. P.W. fought back and successfully gained control of the knife but sustained several cuts and a severe injury to his thumb tendon during the struggle.

P.W. then yelled "get back," and Tunney got off the trolley. P.W. remained on the trolley past his intended stop, got off at the next stop, and returned to the previous stop. Tunney was still there and asked P.W. to return his knife. When P.W. refused, Tunney got back on the trolley.

Officers arrested Tunney on February 28, 2023, and he was criminally charged on March 2, 2023.

On June 14, 2023, Tunney filed a motion for mental health diversion under sections 1001.35 and 1001.36 based on his history of alcoholism, drug

3

addiction, and various mental health issues. In support of his motion, Tunney provided a psychological evaluation report from Todd D. Pizitz, Ph.D., letters of support from Mother and other family and friends, and a copy of the La Mesa Police Department's February 28, 2023 arrest report.

In his report, Dr. Pizitz diagnosed Tunney with five mental health disorders: (1) posttraumatic stress disorder; (2) persistent depressive disorder, mild, with anxious distress; (3) unspecified schizophrenia spectrum and other psychotic disorder; (4) alcohol use disorder, severe; and (5) stimulant use disorder, amphetamine type, severe. Dr. Pizitz recommended that Tunney abstain from alcohol and all illicit substances, continue taking his psychiatric medications as prescribed, and consult with jail psychiatry about additional psychiatric medications that could ameliorate his auditory hallucinations and paranoia. He also recommended that Tunney receive individual therapy aimed at recognizing and managing his symptoms of depression and psychosis and specialized treatment for PTSD.

The People filed written opposition in which they argued (1) there was insufficient evidence that Tunney's mental health disorder was a "significant factor in the commission of the charged offense" (§ 1001.36, subd. (b)(2)), (2) a qualified mental health expert had not opined that Tunney's "symptoms . . . causing, contributing to, or motivating the criminal behavior would respond to mental health treatment" (*id.*, subd. (c)(1)), (3) Tunney would "pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community" (*id.*, subd. (c)(4)), and (4) Tunney failed to provide the court with any treatment plan that " 'will meet [Tunney's] specialized mental health treatment needs' " (*id.*, subd. (f)(1)(A)(i)).

On August 21, 2023, the court concurrently held Tunney's preliminary hearing and motion for mental health diversion. Before the hearing, Tunney

4

filed his own handwritten treatment plan listing in part "In/Out Patient Residential Treatment . . . 30/60/90 day rehabilitation" and "Recovery/After Care," which included "sober living," "AA/NA meetings," and weekly "1-on-1 counseling sessions [and] therapy." He also attached letters to his family, former treatment programs and the court in which he expressed regret for his prior failings and his commitment to his future recovery. At the hearing, Officer Gaytan, Officer Bender, P.W., Mother, and Tunney's younger sister testified, and a video of the trolley incident, a photograph of the knife, and two photographs of P.W.'s hand were admitted into evidence.

At the conclusion of evidence, the court held Tunney to answer on the following five counts: (1) willful, deliberate and premeditated attempted murder of P.W. (§§ 187, subd. (a), 189, 664) with personal infliction of great bodily injury (§ 12022.7, subd. (a)); (2) assault of P.W. with a deadly weapon (§ 245, subd. (a)(1)) with personal infliction of great bodily injury (§ 12022.7, subd. (a)); (3) carrying a concealed dirk or dagger (§ 21310); (4) criminally threatening Mother (§ 422); and (5) assault of A.T. (§ 240).

The court then proceeded to hear counsel's arguments on the diversion motion. Preliminarily, the court determined Tunney was eligible for mental health diversion and specifically found that Tunney suffers from qualifying mental health disorders that were "a significant factor in the commission of some, if not all, of the offenses." The court then found Tunney was not "an appropriate candidate" for mental health diversion after expressing concern over the proposed treatment plan, the "disturbing" video showing "violence, a random, unpredictable attack . . . close to [P.W.]'s chest/neck area," and the risk to society. The court ultimately denied Tunney's motion without prejudice to allow Tunney "to renew it."

5

Approximately one month later, Tunney pled guilty to count 2 (unlawfully assaulting P.W. with a deadly weapon in violation of § 245, subd. (a)(1)) and admitted the great bodily injury enhancement (§ 12022.7, subd. (a)), and the court dismissed counts 1, 3, 4 and 5. On October 17, 2023, the court imposed the parties' stipulated sentence of six years in state prison and denied probation.

On October 19, 2023, Tunney filed a timely notice of appeal challenging the denial of his diversion motion, and on November 29, 2023, the trial court granted his request for a certificate of probable cause.

## DISCUSSION

### A. Applicable law and standard of review

Pretrial mental health diversion under section 1001.36 authorizes "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." (*Id.*, subd. (f)(1).) To qualify, the defendant must be both eligible and suitable for diversion. A defendant is eligible for diversion if two criteria are met: (1) the defendant "has been diagnosed" with a qualifying mental disorder, and (2) the mental disorder "was a significant factor in the commission of the charged offense." (*Id.*, subd. (b)(1), (2); *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).) "If the defendant meets the two enumerated eligibility requirements, 'the court must consider whether the defendant is suitable for pretrial diversion.' (§ 1001.36, subd. (c).)" (*People v. Brown* (2024) 101 Cal.App.5th 113, 120 (*Brown*).)

A defendant is suitable for pretrial diversion if four criteria are met: "(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the

6

criminal behavior would respond to mental health treatment; (2) The defendant consents to diversion and waives the defendant's right to a speedy trial; (3) The defendant agrees to comply with treatment as a condition of diversion; and (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in [s]ection 1170.18, if treated in the community." (*Brown, supra*, 101 Cal.App.5th at p. 120 [cleaned up]; § 1001.36, subd. (c)(1)-(4).) In determining suitability, the trial court may consider "the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).)

A defendant poses an " 'unreasonable risk of danger to public safety' " if there is "an unreasonable risk" the defendant will commit a new violent felony, known as super strikes, within the meaning of section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subd. (c).) To find such an unreasonable risk, "a trial court necessarily must find the defendant is likely to commit a super-strike offense." (*People v. Moine* (2021) 62 Cal.App.5th 440, 450 (*Moine*) [cleaned up].)[2]

Super strikes " 'include murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, . . . any serious or violent felony punishable by death or life imprisonment['] . . . [, and] . . . sexually violent offenses and sexual offenses committed against minors under the age of 14." (*Moine, supra*, 62 Cal.App.5th at pp. 449-450.)

---

[2] Although the statute itself does not use the word "likely," we will assume without deciding that *Moine* correctly interpreted the statutory language "unreasonable risk that the [defendant] will commit" a super-strike offense (§ 1170.18, subd. (c)) to mean that the defendant must be " 'likely to commit a super-strike offense.' " (*Moine, supra*, 62 Cal.App.5th at p. 450.)

As we explained in *Sarmiento, supra*, 98 Cal.App.5th 882: "Assuming the defendant is both eligible and suitable, the trial court must also be satisfied 'that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant.' (§ 1001.36, subd. (f)(1)(A)(i)[.)]" (*Id.*, at p. 892.) "This is not an additional eligibility or suitability requirement the defendant must meet. Rather, subdivision (f)(1) of section 1001.36 read as a whole appears to contemplate an ongoing assessment to assure that defendants will receive appropriate treatment for their particular conditions as part of the diversion program." (*Ibid.*)

Even if a defendant makes a prima facie showing to satisfy the eligibility and suitability requirements, the trial court may still exercise its discretion to deny mental health diversion. (See *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080 [mental health diversion is ultimately discretionary, not mandatory, even if all statutory requirements are met]; § 1001.36, subds. (a) ["the court may, in its discretion, . . ." grant pretrial diversion"], (b)(1) ["[a] defendant is eligible for pretrial diversion" if certain criteria are met].)

On appeal, we review the court's ultimate decision whether to grant or deny a motion for mental health diversion for abuse of discretion. (*Brown, supra*, 101 Cal.App.5th at p. 121.) "The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.) A court abuses its discretion when it "appl[ies] the wrong legal standard, or bases its decision on express or implied factual findings

8

that are not supported by substantial evidence." (*Moine, supra*, 62 Cal.App.5th at p. 449 [cleaned up].)

We must view the record in the light most favorable to the trial court's ruling. (*People v. Johnson* (2016) 1 Cal.App.5th 953, 960.) In the absence of an affirmative record to the contrary, we assume the trial court followed the law and considered all appropriate factors in reaching its conclusion. (See *People v. Carmony* (2004) 33 Cal.4th 367, 378; *People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

*B. The trial court applied the correct legal standard.*

Tunney first argues the trial court abused its discretion by failing to apply the correct legal standard in its dangerousness analysis. He asserts the court did not expressly discuss section 667 or find that Tunney was " ' "likely to commit a super-strike offense." ' " He claims the court instead commented that it found the video of Tunney's attack "disturbing" and "just [did]n't have a good feel[ing] for releasing him," focused on the "violence, a random, unpredictable attack . . . close to [P.W.]'s chest/neck area," and "appeared to conflate [Tunney's] perceived 'anger issues' with his risk to society." We reject this argument for several reasons.

First, nothing in the statute requires the trial court to make an express finding on any of the suitability factors, including that the defendant is likely to commit a super-strike offense. Section 1001.36 makes no mention of section 667, nor does it require the court to make any express findings orally on the record or in writing. Rather, section 1001.36, subdivision (c) merely specifies the suitability criteria "the court must *consider*," including whether "[a] defendant . . . pose[s] an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (*Id.*, subd. (c)(4).) Under the usual doctrine of implied findings, we must imply all findings in

9

favor of the trial court's order, including an implied finding that Tunney was likely to commit a super-strike offense. (See *Moine, supra*, 62 Cal.App.5th at p. 451 [analyzing whether record supported "the trial court's implied finding that Moine was likely to commit a super strike offense"].)

Second, in the absence of a contrary showing, we must also assume the trial court knew and followed the law and considered all appropriate statutory factors.[3] (See *People v. Thomas* (2011) 52 Cal.4th 336, 361 ["In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law' "].) Here, nothing in the record suggests that the trial court applied the wrong legal standard in determining Tunney's suitability for diversion. On the contrary, the record makes clear that the trial court was aware of the suitability factors. At the outset of the hearing, the court informed the parties that it had read their motion papers not just once, but twice, and the People's opposition set forth the statutory requirements verbatim and specifically discussed their application to the facts and circumstances of this case. The People's opposition informed the court that "[u]nder the statute, a defendant poses an unreasonable risk of

_____

[3]    At oral argument, counsel for Tunney cited several cases for the proposition that to deny mental health diversion, the trial court must make an express finding that the defendant poses an unreasonable risk of committing a new super-strike offense. But these cases merely held that the trial court must make a finding on this suitability factor, not necessarily an *express* finding. (*Sarmiento, supra*, 98 Cal.App.5th at p. 892; *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149; *People v. Pacheco* (2022) 75 Cal.App.5th 207, 212-213; *Moine, supra*, 62 Cal.App.5th at pp. 447-448.) In *Moine*, the court even applied the usual rule requiring reversal when a court "bases its decision on express *or implied* factual findings that are not supported by substantial evidence" (*Moine*, at p. 449, italics added) and found "the record does not support the trial court's *implied finding* that Moine was likely to commit a super-strike offense if he received mental health treatment in the community." (*Id*. at p. 451, italics added.)

danger to public safety when the court finds him or her likely to commit a super strike offense," and after discussing several relevant cases concluded: "[Tunney's] action in this case, specifically as seen on video, shows that he is ready to commit a super-strike offense. He threatened to kill his mother on multiple occasions. He then did attempt to kill an unsuspecting trolley passenger by taking a large knife to the victim's neck. [Tunney] poses an unreasonable risk of danger to the community, as shown by his own actions."

Section 1001.36, subdivision (c) expressly permits the trial court to consider "the opinions of the district attorney, the defense, or a qualified mental health expert, and . . . the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (*Id.*, subd. (c)(4).) The court's comment that it found the video of Tunney's attack "disturbing" and its focus on the "violence, a random, unpredictable attack . . . close to [P.W.]'s chest/neck area" were appropriate considerations for determining whether Tunney was " 'likely to commit a super-strike offense.' " (*Moine, supra*, 62 Cal.App.5th at p. 450.)

Similarly, the trial court properly considered Tunney's "anger issues" and the inadequacy of his proposed treatment plan in making this determination. Tunney's anger issues were at least one relevant factor in deciding his likelihood to commit a super-strike offense. (See *People v. Strother* (2021) 72 Cal.App.5th 563, 576 [considering defendant's lack of conflict resolution and anger management programming].) Moreover, section 1001.36, subdivision (c)(4) expressly permits the trial court to consider "the defendant's treatment plan" in making this determination. In short, we see nothing in the record to overcome the usual presumption that the trial court applied the correct legal standard.

11

*C. The trial court's dangerousness finding is supported by substantial evidence.*

Tunney next argues the trial court's conclusion that Tunney posed an unreasonable risk of danger to public safety is not supported by substantial evidence. We disagree.

A substantial evidence inquiry examines the record in the light most favorable to the trial court's order. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.) We must uphold the trial court's order "if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question. Once such evidence is found, the substantial evidence test is satisfied." (*Ibid.*, original italics.) In this case, ample evidence supports the trial court's express and implied findings that Tunney would pose an unreasonable risk of danger to public safety and was therefore not suitable for mental health diversion. (§ 1001.36, subd. (c)(4).)

Subdivision (c)(4) expressly authorized the trial court to consider the charged offenses, which in this case included willful, deliberate and premeditated attempted murder of P.W. (the super-strike offense), assault of P.W. with a deadly weapon, and carrying a concealed dirk or dagger during the unprovoked trolley attack in February 2023, in addition to criminally threatening to kill Mother and assaulting Aunt during the incident in September 2022. The testimony of multiple witnesses at the combined hearing and the "chilling" video depicting the circumstances of the unprovoked knife attack on P.W. support the trial court's finding that he was likely to commit a super-strike offense. (See *People v. Bunas* (2022) 79 Cal.App.5th 840, 862 ["[T]here is nothing in section 1001.36, with respect to . . . suitability, that precludes a trial court from relying primarily, or even

12

entirely, on the circumstances of the charged offense or offenses in denying a motion for diversion."].)

The specific facts of the attack on P.W. not only caused the trial court to bind Tunney over on the attempted murder charge, but they support its implied finding that he was likely to commit another future super-strike offense (murder or attempted murder). Without warning or provocation, Tunney stood up behind P.W. on the trolley, wrapped his arm around him, and held a knife against his chest. Tunney whispered, "don't move" while he held the knife seven to eight inches from P.W.'s neck. P.W. fought back and successfully gained control of the knife but sustained several cuts and a severe injury to his thumb tendon during the struggle. Officer Gaytan, the detective who investigated the attempted murder, also testified about Tunney's criminal history, and Officer Bender offered testimony concerning Tunney's criminal threats and assault of his family members during the September incident. Moreover, there was other evidence that Tunney was prone to erratic behavior, calling into question whether he could be safely treated in the community without a more robust treatment plan. Considered in its totality, this is substantial evidence to support the trial court's implied finding that Tunney "pose[d] an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).)

Based on our review of the evidence and the statutory suitability factors, we conclude the trial court applied the correct legal standard and its conclusion that Tunney was not a suitable candidate for mental health diversion was supported by substantial evidence. There was no abuse of discretion.

13

## DISPOSITION

The judgment is affirmed.


BUCHANAN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DATO, J.